**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| THOMAS WILKES, et al., | : | CIVIL CASE NO. |
| on behalf of themselves and all other | : | 3:20-cv-594 (JCH) |
| persons similarly situated, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | DECEMBER 18, 2020 |
| NED LAMONT, GOVERNOR, et al. | : | |
| Defendants. | : | |

**RULING ON MOTION TO DISMISS (DOC. NO. 32)**

**I.     INTRODUCTION**

Plaintiffs, five people confined in psychiatric hospitals in Connecticut, bring this

action under the Americans with Disabilities Act (the "ADA"), section 504 of the

Rehabilitation Act, section 1983 of title 42 of the U.S. Code, and section 2241 of title 28

of the U.S. Code.  See Am. Compl. (Doc. No. 10).  They seek, on behalf of themselves

and all similarly situated individuals, various forms of declaratory and injunctive relief, as

well as a writ of habeas corpus.  See id. at 25-27 (Prayer for Relief).  Plaintiffs allege in

their Amended Class Action Complaint and Petition for a Writ of Habeas Corpus (the

"Amended Complaint") that the defendants, various state officials with authority over the

operation of Connecticut's inpatient psychiatric facilities, have not adopted adequate

measures to protect plaintiffs and similarly situated persons from the COVID-19

pandemic.  See id. ¶¶ 10-14, 66-88.

Before the court is the defendants' Motion to Dismiss the Amended Complaint.

See Mot. to Dismiss (Doc. No. 32).  The defendants ask the court to decline to hear the

plaintiffs' claims on account of the primary jurisdiction doctrine, to abstain from

exercising jurisdiction over certain of the plaintiffs' claims under the doctrine announced

in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976)

("Colorado River"), and to dismiss the portion of the Amended Complaint seeking a writ

of habeas corpus for failure to exhaust state remedies.  Id. at 1.

      For the reasons below, the Motion to Dismiss is denied in part and granted in

part.  The portion of the Amended Complaint petitioning for a writ of habeas corpus is

dismissed.

## II.    BACKGROUND

      The plaintiffs in this case are five individuals confined at Connecticut Valley

Hospital ("CVH") and Whiting Forensic Hospital ("WFH"), two state-operated inpatient

psychiatric facilities in Connecticut.  Am. Compl. ¶¶ 1-2, 5-9.  Thomas Wilkes, 67 years

old, is civilly committed in the Battell Hall 3 South area of CVH.  Id. ¶ 5.  As of the filing

of the Amended Complaint, Mr. Wilkes was in quarantine after experiencing symptoms

consistent with COVID-19, and after his roommate tested positive for COVID-19.  Id.

Barbara Flood, 64 years old, suffers from kidney failure and is civilly committed in the

Woodward Hall area of CVH, despite having been assessed as "discharge-ready,"

because of difficulties in securing dialysis treatment outside CVH.  Id.  ¶ 6.  Vincent

Ardizzone, 58 years old, suffers from emphysema and Stage IV prostate cancer and is

committed as an acquittee in the Dutcher North 3 area of WFH under section 17a-582

of the Connecticut General Statutes, despite having been approved for temporary leave.

Id.  7.  Gail Litsky, 53 years old, experiences unspecified health conditions that put her

at high-risk for contracting COVID-19 and is committed as an acquittee in the Dutcher

North 2 area of WFH under section 17a-582.  Id. ¶ 8.  Carson Mueller, 45 years old, is

committed as an acquittee in the Dutcher South 3 area of WFH under section 17 pro se-582, despite having "been in psychiatric remission for many years."  Id. ¶ 9.

Certain features of CVH and WFH present obstacles to implementing precautions for curbing the spread of COVID-19.  See id. ¶¶ 18, 20, 43.  According to plaintiffs, "[a]lmost all patients on every unit in both CVH and WFH live in close contact with 15-20 other patients and 5-10 staff at any one time."  Id. ¶ 43.  As of the filing of the Amended Complaint, approximately 209 patients resided in the general psychiatry division of CVH; the Amended Complaint does not report or estimate the total populations of CVH and WFH.  See id. ¶ 16.

On March 24, 2020, the Connecticut Department of Mental Health and Addiction Services ("DMHAS") announced that a staff member at CVH had tested positive for COVID-19.  Id. ¶ 33.  Two days later, DMHAS announced that a patient at CVH also tested positive.  Id. ¶ 34.  In the ensuing weeks, COVID-19 spread throughout CVH and WFH.  Id. ¶¶ 37-40.  By April 28, 2020, there were confirmed COVID-19 cases for patients or staff in every building within CVH and WFH.  Id. ¶ 40.  Several patients were transferred to Middlesex Hospital on account of the severity of their symptoms.  Id.

On April 30, 2020, the outbreak within the hospitals turned lethal when a patient at CVH died from COVID-19.  Id. ¶ 41.  That same day, plaintiffs commenced this case by filing their initial Complaint.  See Compl. (Doc. No. 1).  Plaintiffs subsequently filed their Amended Complaint on May 7, 2020.[1]  See Am. Compl.

---

[1] Plaintiffs moved for a Preliminary Injunction on June 8, 2020, but later withdrew that Motion. See Mot. for Prelim. Inj. (Doc. No. 24); Order (Doc. No. 58) (granting plaintiffs' oral Motion to withdraw their Motion for a Preliminary Injunction).

3

In the Amended Complaint, plaintiffs name as defendants Connecticut Governor Ned Lamont, DMHAS Commissioner Miriam E. Delphin-Rittmon, WFH CEO Hal Smith, and CVH CEO Lakisha Hyatt, in their official capacities only.  Id. ¶¶ 10-13.  Plaintiffs allege that the defendants owe a duty to provide safe conditions at CVH and WFH, and that they have violated this duty by failing to take sufficient measures to protect plaintiffs and other patients from COVID-19.  Id. ¶ 64.

Count One asserts a claim under the substantive component of the Due Process Clause of the Fourteenth Amendment for failure to ensure safe conditions at psychiatric facilities.  Id. ¶¶ 65-74 (citing Youngberg v. Romeo, 457 U.S. 307, 314-25 (1982)). Counts Two and Three asserted claims for discrimination on the basis of physical or mental impairments under Title II of the ADA and section 504 of the Rehabilitation Act. Id. ¶¶ 75-88.

In their Prayer for Relief, plaintiffs seek declarations that defendants have violated plaintiffs' rights, as well as various forms of injunctive relief.  See id. at 25-27 (Prayer for Relief).  The types of injunctive relief sought by plaintiffs range from orders directing regular testing of patients and cleaning of facilities, to orders "suspending all commitments for civil patients, competency restoration patients, [Department of Correction] transfers and acquittees" and directing the "[i]mmediate[ ] discharge [of] patients to the most integrated setting wherever possible, and where not possible to do so immediately, [the provision of] temporary placements."  Id.  Plaintiffs also petition for a writ of habeas corpus ordering the defendants to "release a sufficient number of patients to enable the remaining patients to practice safe social distancing and to

4

enable staff to maintain the hospital[s] in constitutionally safe conditions of confinement."  Id.

On June 11, 2020, the defendants moved to dismiss the Amended Complaint. See Mot. to Dismiss.  The defendants argue that plaintiffs' request for relief via a writ of habeas corpus should be dismissed for failure to exhaust state remedies, that the court should decline to address plaintiffs' claims at this time on account of the primary jurisdiction doctrine, and that the court should abstain under Colorado River from plaintiffs' claims pertaining to assessment and discharge.  See Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Doc. No. 33) at 8, 13, 17.  Plaintiffs filed their Opposition to defendants' Motion on July 2, 2020.  See Mem. of Law in Supp. of Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") (Doc. No. 47).  Subsequently, on July 20, 2020, plaintiffs filed a Supplemental Brief addressing defendants' arguments concerning exhaustion of state remedies.  See Suppl. Br. in Supp. of Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Suppl. Br.") (Doc. No. 62); Order (Doc. No. 61) (granting leave to file).  The defendants filed a Reply on July 30, 2020.  See Defs.' Reply to Pls.' Suppl. Br. Regarding Defs.' Mot. to Dismiss ("Defs.' Reply").

## III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  A plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence.  Id.  When determining whether to dismiss for lack of subject matter jurisdiction, a court may

consider affidavits.  <u>All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.</u>, 436 F.3d
82, 88 (2d Cir. 2006).  A court also "has discretion to hold a hearing to resolve factual
disputes that bear on the court's jurisdiction."  <u>Saleh v. Sulka Trading</u>, 957 F.3d 348,
353 (2d Cir. 2020).  However, a court must otherwise "accept as true all material facts
alleged in the complaint and draw all reasonable inferences in the plaintiff's favor."  <u>Id.</u>

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),
"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting
<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not
akin to a 'probability requirement,' but it asks for more than a sheer possibility that a
defendant has acted unlawfully."  <u>Id.</u>  Reviewing a motion to dismiss under Rule
12(b)(6), the court liberally construes the claims, accepts the factual allegations in a
complaint as true, and draws all reasonable inferences in the non-movant's favor.  <u>See</u>
<u>La Liberte v. Reid</u>, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit
legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  <u>Iqbal</u>,
556 U.S. at 678.

## IV.   DISCUSSION

### A.   <u>Primary Jurisdiction</u>

Under the doctrine of primary jurisdiction, if a "claim requires the resolution of
issues which, under a regulatory scheme, have been placed within the special
competence of an administrative body," a court may "suspend[ ]" the "judicial process
. . . pending referral of such issues to the administrative body for its views."  <u>Tassy v.</u>
<u>Brunswick Hosp Ctr., Inc.</u>, 296 F.3d 65, 73 (2d Cir. 2002) (quoting <u>United States v. W.</u>

Pac. R.R. Co., 352 U.S. 59, 63-64 (1956)).  The doctrine "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties" and "aim[s] to allocate initial decision-making responsibility between courts and agencies and to ensure that they do not work at cross-purposes." Ellis v. Tribune Television Co., 443 F.3d 71, 81 (2d Cir. 2006).

 "No fixed formula exists for applying the doctrine of primary jurisdiction."  Id. (quoting W. Pac. R.R. Co., 352 U.S. at 64).  The Second Circuit has "emphasize[d] that primary jurisdiction is a discretionary doctrine,"  Tassy, 296 F.3d at 72, and has identified four factors bearing on the application of the doctrine: (1) "whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise"; (2) "whether the question at issue is particularly within the agency's discretion"; (3) "whether there exists a substantial danger of inconsistent rulings"; and (4) "whether a prior application to the agency has been made,"  Ellis, 443 F.3d at 81 (citation omitted).

 Courts usually--if not exclusively--invoke the doctrine when economic or financial regulations are at issue.  See, e.g., id. at 89-90 (involving the Federal Communications Commission's power to grant waivers to its licensing rules); MFS Sec. Corp. v. N.Y. Stock Exch., 277 F.3d 613, 621-22 (2d Cir. 2002) (involving the power of the Securities & Exchange Commission to adjudicate challenges to disciplinary actions imposed by the New York Stock Exchange); see also Nw. Airlines, Inc. v. Cty. of Kent, Mich., 510 U.S. 355, 366 n.10 (1994) (suggesting that "[t]he reasonableness of the Airport's rates might have been referred, prior to any court's consideration, to the Department of Transportation under the primary jurisdiction doctrine").  Indeed, the recent Order on

7

which the defendants place heavy emphasis in their Memorandum applies the primary jurisdiction doctrine to claims of unsafe working conditions at meat processing plants. Rural Cmty. Workers All. v. Smithfield Foods, Inc., No 5:20-CV-6063 (DGK), 2020 WL 2145350, at *1 (W.D. Mo. May 5, 2020).

   In this case, the defendants urge the court to refrain from addressing the plaintiffs' claims of unsafe conditions of confinement under the Fourteenth Amendment, the ADA, and the Rehabilitation Act until the court "has available to it the considered judgement" of the CDC, DPH, and DMHAS.  See Defs.' Mem. at 12-13.  The defendants suggest that that the court may refer the case to the CDC or DPH, and that the plaintiffs may file complaints with these agencies or an administrative grievance with DMHAS. See id.

   The first two primary jurisdiction factors--"whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise" and "whether the question at issue is particularly within the agency's discretion"--weigh heavily against invoking the doctrine.  At issue in this case is whether there has been "a substantial departure from accepted professional judgment, practice, or standards," such that the conditions at Connecticut's inpatient psychiatric hospitals violate the plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment.  Youngberg, 457 U.S. at 323.

   The court has no doubt that the CDC, DPH, and DMHAS possess expertise concerning what constitutes "accepted professional judgment, practice, or standards" relevant to the parties and issues in this case.  However, the task of assessing plaintiffs'

claims requires determining whether their fundamental rights under the Constitution have been violated.  This question can only be answered through consideration of both case law interpreting the Constitution and facts relevant to what constitutes "accepted professional judgment, practice, or standards."  The former component of this inquiry involves the very core of "the conventional experience of judges" and is not "particularly within [any] agency's discretion."

In this respect, the court finds it notable that the defendants have not identified a single case invoking the doctrine of primary jurisdiction in connection with claims alleging violations of individual rights under the Due Process Clause of the Fourteenth Amendment, let alone under any other constitutional provision.  The defendants make much of a recent Order of the U.S. District Court for the Western District of Missouri applying the primary jurisdiction doctrine in the context of the COVID-19 pandemic.  Defs.' Mem. at 10-11.  However, as explained above, that Order involves claims of unsafe working conditions at meat processing plants.  Rural Cmty. Workers All., 2020 WL 2145350, at *1.  It falls firmly within the line of cases applying the doctrine of primary jurisdiction in cases involving economic regulations.

The defendants' position, if accepted, would effectively erect an exhaustion requirement for all claims involving complex or technical facts, regardless as to whether such claims involve questions of individual rights protected by the Constitution.  The primary jurisdiction doctrine exists because an ad hoc quasi-exhaustion requirement may sometimes be desirable and tolerable when issues involving complex or technical factual issues have been committed to the discretion of an agency, but the court doubts

whether such an arrangement would ever be acceptable in a case involving alleged violations of constitutional rights.

The third and fourth primary jurisdiction factors--"whether there exists a substantial danger of inconsistent rulings" and "whether a prior application to the agency has been made"--offer little guidance in this case.  The defendants assert that "ferreting through these complicated, technical and evolving factual issues, and electing to, in effect, choose winners and losers amongst the options presented for those charged with operating [the] facilities" creates a substantial danger of inconsistent rulings, but they provide no further reasoning or citations in support of this statement.  See Defs.' Mem. at 12.  With respect to whether a prior application has been made to any of the agencies, the defendants acknowledge that "it appears no formal complaints have been filed", but suggest that this factor should not weigh heavily in the court's analysis, because "federal courts themselves may initiate such referrals."  See id. at 12-13.

Even assuming that the third and fourth factors were to favor the defendants' position, the court finds that the first and second factors outweigh these considerations for the reasons discussed above.  Therefore, the court denies the defendants' Motion to Dismiss as to this issue and declines to exercise its discretion to apply the doctrine of primary jurisdiction.

B.    Colorado River Abstention

The abstention doctrines recognize "a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction."  Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012) (quoting Woodford v. Cmty. Action Agency of Greene Cty., Inc., 239 F.3d 517, 522 (2d Cir.

2001)).  "Under the Colorado River exception the court may abstain in order to conserve

federal judicial resources only in 'exceptional circumstances,' where the resolution of

existing concurrent state-court litigation could result in 'comprehensive disposition of

litigation.'"  Woodford, 239 F.3d at 522 (quoting Colorado River, 424 U.S. at 813).

Courts consider six factors when determining whether to abstain under Colorado

River: (1) "whether the controversy involves a res over which one of the courts has

assumed jurisdiction"; (2) "whether the federal forum is less inconvenient than the other

for the parties"; (3) "whether staying or dismissing the federal action will avoid

piecemeal litigation"; (4) "the order in which the actions were filed, and whether

proceedings have advanced more in one forum than in the other"; (5) "whether federal

law provides the rule of decision"; and (6) "whether the state procedures are adequate

to protect the plaintiff's federal rights."  Id. (citations omitted).  "No one factor is

necessarily determinative; a carefully considered judgment taking into account both the

obligation to exercise jurisdiction and the combination of factors counseling against the

exercise is required."  Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr.

Corp., 460 U.S. 1, 15-16 (1983)).

The Second Circuit has indicated that abstention under Colorado River is

disfavored, emphasizing that "the balance [is] heavily weighted in favor of the exercise

of jurisdiction," and that "[o]nly the clearest of justifications will warrant dismissal."  Id.

(quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 15-16).  Consistent with this

approach, the Second Circuit has instructed that "the facial neutrality of a factor is a

basis for retaining jurisdiction, not for yielding it."  Id.

11

Here, the defendants ask the court to abstain from addressing the plaintiffs' claims for relief related to assessment and discharge, in light of Drummer v. State of Connecticut, et al., MMX-CV-18-5010661-S.[2]  Defs.' Mem. at 15.  According to the defendants, that case, which was filed in Connecticut Superior Court on January 25, 2018, seeks forms of relief that are "directly comparable" to those sought in the instant case.  See id.  In fact, the defendants charge that "[a]n honest assessment of the juxtaposition of the two sets of claims and prayers for relief in these lawsuits legitimately raises the concern that the Covid-19 pandemic may be being exploited in the second lawsuit as a convenient basis for pursuing a deinstitutionalization agenda."  Id.

In Drummer, a person confined at CVH filed a putative class action alleging that she and others are unnecessarily being kept in psychiatric inpatient facilities, in violation of Connecticut law.  Ex. A, Pls.' Opp'n ("Drummer Compl.") (Doc. No. 47-1) ¶¶ 1-9.  The Complaint in Drummer asserts claims on behalf of two classes: (1) "[a]ll psychiatric inpatients involuntarily civilly committed to a state-operated psychiatric facility who within a reasonable degree of medical certainty, are likely to not meet commitment standards before their annual or biannual review," but who have not received periodic reviews of their status; and (2) "[a]ll psychiatric inpatients involuntarily civilly committed to a state-operated psychiatric facility, who have been declared discharge ready by their

_____

[2] The plaintiffs and defendants both attached copies of materials filed in Drummer to their memoranda opposing and supporting the defendants' Motion to Dismiss, which the court may consider in determining whether to dismiss under Federal Rule of Civil Procedure 12(b)(1).  See All. for Envtl. Renewal, Inc., 436 F.3d at 88 (recognizing that courts may consider certain materials outside a complaint when deciding a motion under Rule 12(b)(1).  Additionally, the court may take judicial notice of materials filed in Drummer because they are matters of public record.  See Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012).

treatment teams or not meeting commitment standards by the probate court, but who remain in the facility . . . because of a lack of appropriate placements, supports and services in the community." Id. ¶ 9. The forms of relief requested include "declaratory judgment that the state's failure to establish and maintain a mental health system that provides adequate community supports and services . . . violates the Connecticut Patients' Bill of Rights", and an injunction ordering periodic reviews aimed at facilitating discharge of individuals involuntarily civilly committed in Connecticut's inpatient psychiatric facilities. Id. at 19-22 (Request for Relief).

On July 12, 2019, the Connecticut Superior Court denied the Drummer plaintiff's Motion for Class Certification, as well as the defendants' Motion to Dismiss the Complaint as moot. Ex. B., Pls.' Opp'n (Doc. No. 47-2) at 2. The defendants' Motion to Dismiss the Complaint in Drummer for failure to state a claim, which was filed on February 6, 2020, remains pending. See Superior Court Case Look-up: Docket Number Search, State of Conn. Judicial Branch, http://civilinquiry.jud.ct.gov/GetDocket.aspx (search full docket number field for "MMX-CV-18-5010661-S").

With respect to the first two Colorado River factors, the defendants readily acknowledge that "[t]here is no 'res' at issue here," and, though the defendants complain that it is inconvenient for them to "defend[ ] their current discharge practices in two forums at the same time," they do not argue that the District of Connecticut is an inconvenient forum in and of itself. See Defs.' Mem. at 16. The Second Circuit has held that "the absence of a res and the equivalent convenience of the federal forum are factors that favor retention of jurisdiction." Woodford, 239 F.3d at 523.

13

The third and fifth factors--the risk of piecemeal litigation and duplicative proceedings, and whether federal law provides the rule decision--also weigh against abstention.  There is no doubt that federal law provides the rule of decision in the current case, regardless as to whether Connecticut law parallels federal law concerning the rights of individuals confined in inpatient psychiatric hospitals.  Further, while it is true that there is substantial overlap between the relief sought in both cases, it is not clear that abstaining in the instant case would avoid piecemeal litigation.  Even assuming for the sake of argument that the Drummer plaintiff might successfully file a second motion for class certification, the plaintiffs in the current case seek relief that they argue has become necessary in light of the COVID-19 pandemic.  See Am. Compl. ¶¶ 2, 60, 64, 81, 88.  In contrast, Drummer was filed prior to the outbreak of COVID-19. See Drummer Compl.

Even assuming that the two remaining factors--the order in which the cases were filed, and whether state procedures are adequate to protect the plaintiffs' federal rights-- favor the defendants, this is not enough to justify abstention in this case.  Given the Second Circuit's clear indications that Colorado River abstention is disfavored, and that "[o]nly the clearest of justifications will warrant dismissal," the court concludes that abstention is not warranted here.  See Woodford, 239 F.3d at 522(quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 15-16).   Particularly given that it is not clear that there is a risk of piecemeal litigation, and given that federal law--including interpretations of the Fourteenth Amendment--provides the rule of decision, the "exceptional circumstances" needed for application of Colorado River abstention are absent in this case.  Id. (citing Colorado River, 424 U.S. at 813).  Therefore, the court denies the

14

defendants' Motion to Dismiss as to the defendants' argument that the court should abstain from exercising jurisdiction under Colorado River.

    C.    <u>Habeas Corpus</u>

Section 2241 of title 28 of the U.S. Code provides that "[w]rits of habeas corpus may be granted by . . . the district courts."  28 U.S.C. § 2241(a).  In the Second Circuit, individuals in custody under federal authority may petition for writs of habeas corpus under section 2241 challenging the conditions of their confinement, as opposed to the underlying reason for their confinement.  <u>See</u> <u>Thompson v. Choinski</u>, 525 F.3d 205, 209 (2d Cir. 2008).  At least one judge in this District has recently held that individuals confined pursuant to state authority may petition under section 2241 to challenge conditions of confinement.[3]  <u>McPherson v. Lamont</u>, 457 F. Supp. 3d 67, 75-76 (D. Conn. 2020).

In <u>James v. Walsh</u>, 308 F.3d 162 (2d Cir. 2002), however, the Second Circuit held that state prisoners must file both challenges to the imposition and execution of sentences under section 2254 of title 28 of the U.S. Code.[4]  <u>Id.</u> at 166-67.  Although <u>James</u> addressed a claim that an individual's release date had been improperly calculated, as opposed to a challenge to conditions of confinement, and although

---

[3] Although petitions for writs of habeas corpus are usually filed by individuals in custody pursuant to criminal judgments, <u>i.e.</u>, prisoners, it is well settled that "there are other types of state court judgments pursuant to which a person may be held in custody within the meaning of the federal habeas statute," including judgment ordering the confinement of individuals in psychiatric facilities.  <u>See</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 176 (2001).

[4] The Second Circuit has characterized challenges to conditions of confinement filed by prisoners as challenges to the "execution" of their sentences, as opposed to the "imposition" of their sentences.  <u>See</u> <u>Thompson</u>, 525 F.3d at 209 (citations omitted).

James did not involve a petitioner confined in a psychiatric facility, the Circuit's opinion includes language strongly suggesting that all habeas petitions submitted by individuals in state custody must be filed under section 2254.  See id.  In support of its holding that the petitioner's challenge to the duration of his sentence needed to be brought under section 2254, rather than section 2241, the Circuit reasoned that "[h]ad Congress intended to make Section 2241 available to state prisoners, it would likely have required, in the interests of comity, that state prisoners challenging the execution of their state-imposed sentences first exhaust their remedies in the state courts."  Id. at 167.

Whether a habeas petition must be brought under section 2241 or 2254 determines whether exhaustion of state remedies is jurisdictional or discretionary. Subsection (b)(1) of section 2254 prohibits courts from granting habeas petitions "unless it appears that [ ] the applicant has exhausted the remedies available in the courts of the State; or [ ] there is an absence of available State corrective process; or [ ] circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1).  Although section 2241 does not include a statutory exhaustion requirement, see 28 U.S.C. § 2241, petitions filed under section 2241 are nevertheless subject to a judicially created discretionary exhaustion requirement, see McPherson, 457 F. Supp. 3d at 75-76 (collecting cases); see also Carmona v. U.S Bureau of Prisons, 243 F.3d 629, 633-34 (2d Cir. 2001) (recognizing exhaustion requirement for federal prisoner proceeding under section 2241 who had not exhausted federal administrative remedies).  Failure to exhaust state remedies may be excused under section 2241 if doing so would be futile, if state remedies are inadequate, or if

pursuing state remedies would cause plaintiffs undue prejudice.  See McPherson, 457 F. Supp. 3d at 76.

Here, plaintiffs initially suggested that "there is no need for the Court to reach this issue" because--according to the plaintiffs--whether their petition for writ of habeas corpus is properly before the court "is mostly academic for purposes of this case."  Pls.' Opp'n at 14.  Perhaps realizing that a writ of habeas corpus might be necessary for certain forms of relief, plaintiffs subsequently filed a Supplemental Brief arguing that "[e]xhaustion in state court or with DMHAS would be futile and inadequate due to both limitation of remedies and delay, and would cause Plaintiff's [sic] undue prejudice."  Pls.' Suppl. Br. at 5.

In their Supplemental Brief, plaintiffs acknowledge that individuals confined in inpatient psychiatric facilities in Connecticut may challenge the conditions of their confinement under the Connecticut Patients' Bill of Rights, which is codified at sections 17a-540 through 17a-550 of the Connecticut General Statutes.  Id. at 6.  Section 17a-550 provides that "[a]ny person aggrieved by a violation of sections 17a-540 to 17a-549, inclusive, may petition . . . for appropriate relief, including temporary and permanent injunctions, or may bring a civil action for damages."  Conn. Gen. Stat. § 17a-550. Plaintiffs do not address whether "appropriate relief" under section 17a-550 could encompass the relief sought in this case.  See Pls.' Suppl. Br. at 6.

Instead, plaintiffs focus their attention on whether the text of two Connecticut habeas statutes, sections 52-466(a)(1) and 17a-524 of the Connecticut General Statutes, permit them to petition for writs of habeas corpus without challenging their

commitment orders.[5]   Section 52-466(a)(1) applies to a "person whose custody is in question [who] is claimed to be illegally confined or deprived of such person's liberty." Conn. Gen. § 52-466(a)(1).  Section 17a-524 applies to a "person confined in a hospital for psychiatric disabilities" challenging the "illegality or invalidity of the [person's] commitment."  Conn. Gen. § 17a-524.

While the court understands how the plaintiffs can interpret the text of these provisions, without additional context, as "requir[ing] a challenge to the legality of confinement as a prerequisite," Pls.' Suppl. Br. at 8, such an interpretation is not necessarily compelled by the language of these statutes.  To begin with, the Second Circuit in James interpreted analogous language in section 2254 permitting the filing of a habeas petition "on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States" as authorizing petitions challenging both the imposition and execution of state sentences.  308 F.3d at 166-67.  More importantly, the Connecticut Supreme Court has addressed a challenge to conditions of confinement raised via habeas petition, albeit without stating whether a challenge to the reason for confinement was a prerequisite, and without identifying the specific statutory authority for the petition.  See Faraday v. Comm'r of Corr., 288 Conn. 326, 328-29 (2008).  Further, the Connecticut Appellate Court has specifically identified section 52-466(a)(2) as authorizing habeas petitions challenging conditions of confinement.  State v. Carney, 184 Conn. App. 456, 466-67 (2018).  Section 52-466(a)(2) states that

---

[5] Plaintiffs quote the text of these statutes but do not cite any cases in support of their argument that they cannot petition for writs of habeas corpus in state court without challenging their commitment orders.  See Pls.' Suppl. Br. at 6-8.

prisoners may file habeas petitions "claiming illegal confinement or deprivation of liberty"--the same language used in section 52-466(a)(1), which plaintiffs acknowledge applies to individuals confined in psychiatric facilities.  Conn. Gen. Stat. § 52-466(a); see Pls.' Suppl. Br. at 6.  The court has not identified any cases limiting the use of habeas petitions in Connecticut only to circumstances where the reason for confinement is challenged.  Therefore, the court concludes that plaintiffs have failed to show that Connecticut statutes leave them without an adequate remedy.

Plaintiffs also argue that their failure to exhaust state remedies should be excused because of the reduced capacity of Connecticut courts during the COVID-19 pandemic.  See Pls.' Suppl. Br. at 10-11.  However, the defendants included as an exhibit to their Reply to the plaintiffs' Supplemental Brief a Declaration from the Chief Clerk for the Superior Court for the Judicial District of Middlesex stating that any "party seeking to bring a habeas action . . . or challenge his or her conditions of confinement at a psychiatric hospital . . . during any time the Middlesex Judicial District courthouse was closed to the public as a result of the [COVID-19] pandemic could have mailed in his or her summons and complaint" or filed documents electronically.  Ex. to Defs.' Reply to Suppl. Br. (Doc. No. 65-1) ¶ 3.  Further, the Chief Clerk stated that any filings deemed "non-Priority 1 matters could have been brought to a judge's attention by the filing of a caseflow request", at which point "[a] judge would have reviewed the pleading to determine if immediate action is required."  Id. ¶ 4.  Thus, although plaintiffs' fears of delays while pursuing state remedies during the COVID-19 pandemic are not unreasonable given the unprecedented nature of the current crisis in recent history,

their arguments with respect to the delays they allege their particular claims would face amount to little more than speculation.

Therefore, the court concludes that the plaintiffs' failure to exhaust state remedies should not be excused.  On account of this conclusion, the court need not address whether plaintiffs' petition must be brought under section 2241 or 2254.  The defendants' Motion to Dismiss is granted as the plaintiffs' petition for a writ of habeas corpus, and the portion of the Amended Complaint petitioning for a writ of habeas corpus is dismissed without prejudice to repleading if changed circumstances during the pandemic give rise to a good faith basis for arguing that exhaustion of state remedies should not be required in this case.  The court does not believe that this aspect of this Ruling is appealable at this juncture in the case, but the court notes its determination that it will not issue a certificate of appealability once a final judgment is entered in the case, because the plaintiffs have not "made a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2).

## V.    CONCLUSION

For the reasons discussed above, the defendants' Motion to Dismiss (Doc. No. 32) is denied in part as to the defendants' arguments concerning primary jurisdiction doctrine and Colorado River abstention and granted in part as to the defendants' arguments concerning habeas corpus.  The portion of the Amended Complaint petitioning for a writ of habeas corpus is dismissed.

**SO ORDERED.**

Dated this 18th day of December 2020, at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
U.S. District Judge